OPINION OF THE COURT
J. Robert Houston, J.
Petitioners are seeking an order of this court permitting the sterilization of their adopted daughter, Rebecca Nilsson, age 14. Miss Nilsson was adopted by them in 1970; she suffers from mental retardation, speech deficiencies and has been tested to have an I.Q. between 50 and 60. This petition requests that the court authorize that a hysterectomy may be performed upon the child, Rebecca Nilsson, age 14, as a sterilization procedure.
A trial of the matter was held, a Law Guardian appointed and the court is now in receipt of the investigation report and recommendation of the Law Guardian.
Rebecca suffers from serious menstrual discomfort during each menstrual cycle. In the petition, and through other affidavits and correspondence before the court, it appears that this discomfort is indeed real and very uncomfortable; Rebecca is forced to miss school and be inactive during the days of greatest discomfort. Both Rebecca’s teachers and her pediatrician attest to the disabilities she suffers at these times.
The petitioners’ concern with Rebecca’s pain, disability, chance of an unwanted pregnancy and her inability to adequately provide for her own personal hygiene has caused them to seek alternatives to relieve her from these difficulties. The options most feasible to alleviate Rebecca’s severe symptoms were: the use of oral medications during the periods of the greatest discomfort; a tubal ligation *459 which would render her sterile by a surgical procedure in which the fallopian tubes are tied; or a hysterectomy by which various reproductive organs are removed. Petitioners request that the latter alternative be permitted so that Rebecca could both avoid the risk of a pregnancy for which she would be both physically and emotionally unable to cope and the immediate and permanent alleviation of the severe pain and discomfort she now suffers. It should be noted that the first and second alternatives independently could not achieve this.
Dr. Arnold Matlin, Becky’s pediatrician, testified in support of the petition. Dr. Matlin testified that Becky is mentally retarded with an I.Q. in the 50 to 60 range and that there is no cure for mental retardation; that she is presumably fertile and capable of child bearing although definitive tests to determine this have not been taken; that in his opinion it would be a tragic event for Becky and any child which she might bear should she become pregnant in that she is presently, and in the future would be, incapable of caring for a child; that although there are alternative means to avoid pregnancy, those means would not eliminate the severe pain and discomfort associated with Becky’s menstrual period; that tubal ligation, a relatively simple medical procedure, would prevent pregnancy but would not alleviate the severe monthly discomfort suffered by Becky; that a simple hysterectomy, one not involving the removal of the ovaries, would be advisable and recommended since it would eliminate both pregnancy risk and eliminate the severe cramps and discomfort which is being experienced.
The Law Guardian for Rebecca has provided a thorough report of the considerations now before the court and has made recommendations thereupon. He concurs with the petitioners, recognizing the problems of birth control, hygiene and menstrual pain, through independent investigation with Rebecca and with medical, teaching and professional individuals. Further, he has examined the statutory provisions of other States regarding the sterilization of incompetent individuals as well as the body of decisional law from New York and other States concerning this issue. In consideration thereof he opines that Rebecca’s best *460 interests would be served by the authorization by the court for the performance of a simple hysterectomy, that is, one in which the ovaries would not be removed. He believes that this would prevent a pregnancy which would almost certainly have to be terminated, preserve the child’s health during the painful period of her menstrual cycle and allow her to care for herself more efficiently without intrusively injuring her body or her rights.
The Law Guardian has provided, for the use of the court, the opinion of the Supreme Court of the State of New Jersey rendered in Matter of Grady (85 NJ 235) which established standards to be applied by the trial court in considering the petition for sterilization of a person who is otherwise unable to give intelligent or knowledgeable consent to such a procedure. The standards were as follows: (1) possibility that the incompetent or disabled person could become pregnant; (2) possibility that the incompetent person would experience trauma or psychological damage if she became pregnant or gave birth as considered with the possibility of trauma or psychological damage resulting from sterilization; (3) the likelihood that the individual would voluntarily engage in sexual activities or be placed in situations where sexual activities might be imposed upon her; (4) the inability of the incompetent person to understand reproduction or contraception and the likelihood of permanence of that inability; (5) feasibility and medical advisability of less drastic means of contraception both at the present time and in the foreseeable future circumstances; (6) the advisability of sterilization at the time of the application as opposed to such a procedure at some future date; (7) the ability of the incompetent person to care for a child with the possibility that the incompetent person may at some future date be able to marry and, with a spouse, care for a child; (8) evidence scientific or medical advances may occur within the foreseeable future which might make possible for improvement of the individual’s condition or alternatives in less drastic sterilization procedures; (9) demonstration that the proponents of the sterilization are seeking it in good faith and that their primary interest is for the best interests of the incompetent person rather than for their own or the public’s convenience.
*461 The court finds that the above standards are appropriate to be applied to the matter at hand.
From the proof adduced at the hearing it was established that Becky is presumably fertile and capable of bearing a child in that there is no indication of any doubts about fertility; that psychological trauma could result if she became pregnant and gave birth and there is no indication that there would be any trauma or psychological damage resulting from any sterilization procedure; that there was testimony that Becky was becoming aware of boys and there exists the possibility that she could participate in promiscuous sexual activities or in view of her mental retardation that sexual activities could be imposed upon her; that although a hysterectomy would be a more extreme form of sterilization, it is the opinion of Dr. Matlin that it would also alleviate her menstrual difficulties in that imbalance and that he would recommend that that procedure be appropriate in view of the fact that it would rectify one prospective difficulty and one actual existing difficulty; in view of Becky’s mental retardation it would be unlikely that she would understand the techniques related to contraception and, that in view of the fact that her mental retardation would remain, that there would be a likely permanence of that inability. Thus in view of Dr. Matlin’s testimony it would appear that the procedure, if to be accomplished, would be appropriately done at the present time in view of Becky’s presumed ability to bear children at this time together with the extreme discomfort which is being experienced in connection with the menstrual cycle. The court further finds that Becky would not be competent to care for a child. Finally, the court is satisfied from the testimony of the adoptive parents that they are concerned with the best interests of the child, are seeking the application in good faith, and that they are not doing so for their own benefit or as related to public convenience.
The petition is approved.